United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>   v.<br><br>MICHAEL REX RUSSELL,<br><br>         Defendant.<br>_____ / | No. CR 06-0646 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's Motion to Modify Terms of Probation** |

      In connection with his second probation violation hearing, defendant Michael Rex Russell ("Russell") is before the court with a motion to modify certain conditions of his probation. Russell contends that existing conditions limiting his access to Six Rivers National Forest ("Six Rivers") in Humboldt County, California are unreasonable and should be modified to allow him to freely develop and occupy his mining claim located therein. Having considered the submissions of the parties and for the reasons stated below, the court enters this memorandum and order.

BACKGROUND

      On March 12, 2007, defendant pleaded guilty to assaulting a federal officer, in violation of 18 U.S.C., section 111(a). For several years prior to the assault, defendant conducted a variety of activities on his unpatented mining claim in Six Rivers.[1] He was convicted multiple times for misdemeanor violations related to his operations, such as unauthorized construction of a road or structure and unauthorized occupancy. (Docket Entry 47). On the day of the assault, two United

1 States Forest ("USFS") officers approached Russell's encampment to notify him that the illegal road
2 leading to his site would be closed. The subsequent encounter between the officers and defendant is
3 disputed. While the officers alleged that Russell pointed a crossbow at them, defendant only
4 admitted to kicking one of the officers in the leg while he was being apprehended and handcuffed.

5       Following his conviction, Russell was sentenced by the court on July 9, 2007 to three years
6 probation. (Docket Entry 50). The Special Conditions of Probation provided for twelve months of
7 incarceration with the first six months served in a halfway house and the remaining six months
8 stayed. Among other Special Conditions imposed by the court were mandatory participation in drug
9 and mental health treatment, and restricted access to USFS lands.

10       In September 2007, the United States Probation Officer ("USPO") filed a Petition for
11 Summons for Offender Under Supervision (commonly known as a "Form 12"), alleging that Russell
12 violated conditions of his probation by testing positive for marijuana on four dates and by
13 subsequently being removed from the halfway house at which he was ordered to reside. (Docket
14 Entry 76, Exh. 4). In an October 2, 2007 order, the court modified defendant's probation, assigning
15 him to a new residential treatment facility and setting other conditions related to drug testing.
16 (Docket Entry 64).

17       The court further modified defendant's probation conditions on January 29, 2008. (Docket
18 Entry 68). While Special Condition No. 7 originally stated, in pertinent part, that Russell shall not
19 go upon USFS property without prior approval of both the USPO and USFS, the amended condition
20 provides that he shall not enter USFS property without prior approval of the USPO and without
21 either prior approval of the USFS or the presence of his attorney.

22       The instant hearing arises out of another Form 12 filed in June 2008, in which the USPO
23 alleges that defendant violated probation conditions by not actually residing at his stated address and
24 testing positive for marijuana on three dates. At the probation violation hearing, defendant requests
25 several modifications to his probation terms such that he may mine and reside on his claim in Six
26 Rivers without interference from the USFS.

2

LEGAL STANDARD

The court has the discretion to "modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation." 18 U.S.C. § 3563(c). The court must hold an evidentiary hearing at which the defendant has the right to counsel and an opportunity to make a statement and present any information. Fed. R. Crim. P. 32.1(c). In modifying any probation conditions, the court must consider the factors which guided the initial setting of the conditions. See 18 U.S.C. § 3563(c); 18 U.S.C. § 3563(b) (governing discretionary probation conditions and requiring reference to the factors set forth in 18 U.S.C. §§ 3553(a)(1)-(2)). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to punish defendant, deter criminal conduct, protect the public, and rehabilitate defendant. See §§ 3553(a)(1)-(2).

DISCUSSION

Special Condition No. 7 of defendant's probation, as amended on January 29, 2008, precludes him from entering USFS property "without prior approval of his US Probation Officer and without either prior approval of USFS or in the presence of his attorney, and only for the purpose of developing or fulfilling his plan of operation for his mining claims or for arranging the assay related to his claim." Defendant seeks several modifications to this condition, including:

1. Permission to freely permit Defendant to mine his claim;
2. A finding that the claim is valid because of the gold that was found;
3. A finding that the Defendant can reside on his claim while mining;
4. A finding that Defendant does not have to file a notice of intention to operate and have approved plans of operation before he can occupy the claim;
5. A finding that in the event that he needs earth moving equipment for mining purposes he will first file a plan of operation with the Forest Service;
6. He will permit the Forest Service access to his claim at all times;
7. That the Forest Service will remove the earthen berm that blocks access to his claim, and will not interfere unnecessarily with Defendant.

3

1  (Docket Entry 74). Defendant argues that these modifications are proper because he has financial
2  need to develop his claim and because the restrictions as enforced by the USFS are unwarranted,
3  unjustified, and invade his right to privacy. Ultimately, defendant's proposed modifications and
4  arguments in support thereof encompass two principal issues: the authority of this court to regulate
5  mining activity on USFS lands and the overall reasonableness of the existing probation conditions.

7  I.     Mining Regulations
8        Russell requests unfettered access to Six Rivers as well as permission to freely mine and
9  occupy his claim. In addressing these requests, however, an important distinction must be drawn
10 between the court-imposed probation conditions and federal mining authority. In particular, while
11 the court has discretion to modify its requirement that defendant obtain prior approval from the
12 USFS to access Six Rivers, federal regulations separately govern whether defendant must submit
13 applications with the USFS in order to conduct certain mining-related activities.
14       Under the General Mining Law of 1872 ("General Mining Law"), 30 U.S.C., sections 21-54,
15 "except as otherwise provided, all valuable mineral deposits in lands belonging to the United States
16 . . . shall be free and open to exploration and purchase, and the lands in which they are found to
17 occupation and purchase." See 30 U.S.C. § 22, *as amended by* 30 U.S.C. § 612 (the "Surface
18 Resources and Multiple Act of 1955"); see also Karuk Tribe of Cal. v. U.S. Forest Service, 379 F.
19 Supp. 2d 1071, 1077-79 (N.D. Cal. 2005) (summarizing the history of mining law). In passing the
20 Organic Administration Act of 1897 ("Organic Act"), 16 U.S.C., sections 478 *et seq.*, Congress
21 expressly made national forests subject to entry pursuant to existing mining law. See 16 U.S.C. §§
22 478, 482. At the same time, the Organic Act vested authority in the Secretary of Agriculture to
23 regulate the occupancy, use, and protection of national forests. See 16 U.S.C. § 551. Accordingly,
24 the USFS, an agency of the Department of Agriculture, promulgated regulations to "minimize
25 adverse environmental impacts" on national forest surface resources in connection with mining
26 activities. See 39 Fed. Reg. 31317 (Aug. 28, 1974) (codified as amended at 36 C.F.R. § 228)
27 ("USFS regulations"); Karuk, 379 F. Supp. 2d at 1077; United States v. Weiss, 642 F.2d 296, 298

4

(9th Cir. 1981) (recognizing Secretary's authority under the Organic Act to adopt regulations regarding mining operations within the national forests).

Defendant's requested modifications implicate these USFS regulations. Specifically, under 36 C.F.R., part 228.4(a), a notice of intent to operate ("NOI") on USFS lands is required "from any person proposing to conduct operations which might cause significant disturbance of surface resources." Operations subject to this requirement include "[a]ll functions, work, and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto." 36 C.F.R. § 228.3(a). Where one is necessary, a NOI must be "submitted to the District Ranger having jurisdiction over the area in which the operations will be conducted" and must include "information sufficient to identify the area involved, the nature of the proposed operations, the route of access to the area of operations, and the method of transport." 36 C.F.R. § 228.4(a). Based on the NOI, if the District Ranger determines that "any operation is causing or will likely cause significant disturbance of surface resources," the operator must submit a proposed plan of operations ("PPO") for approval before the operations may begin. 36 C.F.R. § 228.4(a)(2)-(4).

Pursuant to these rules, defendant must submit a NOI and a subsequent PPO if any of his mining operations "might cause significant disturbance of surface resources." See 36 C.F.R. § 228.4(a); Clouser v. Espy, 42 F.3d 1522, 1530 (9th Cir. 1994) (upholding USFS authority to regulate mining operations in national forests by requiring miners to submit PPOs) (citations omitted). Moreover, any proposed residential occupancy of mining claims falls within the purview of these requirements. See 70 Fed. Reg. 23713 (listing "residential occupancy and use" as "operations" within the meaning of Part 228.4(a)); see also United States v. Brunskill, 792 F.2d 938, 941 (9th Cir. 1986) (finding defendant's cabin and other structures were "significant disturbances" requiring an approved PPO); United States v. Hall, 751 F. Supp. 1380, 1382 n.5 (E.D. Cal. 1990) (noting "[m]ere occupancy of a claim is a 'significant disturbance' of the land requiring the submission of [a PPO]") (citation omitted).

Defendant argues that he should only have to file a PPO in the event that he needs to use earth-moving equipment for mining. He cites to United States v. Lex, 300 F. Supp. 2d 951 (E.D.

5

California 2003), in which the court found, in part, that as long as a mining operation did not involve the use of mechanized earth moving equipment, then a NOI to residentially occupy the claim would not be mandatory. 300 F. Supp. 2d at 962. Any reliance on Lex, however, is misplaced because the USFS later amended 36 C.F.R., part 228.4(a), specifically to overrule the Lex decision. See 70 Fed. Reg. 32713 (June 6, 2005) (explaining reasons for amendment); Karuk, 379 F. Supp. 2d at 1080-82 (same). The final amended part 228.4(a) rule clarified that "the requirement to file a [NOI] with the District Ranger is mandatory in any situation in which a mining operation might cause disturbance of surface resources, regardless of whether that operation would involve the use of mechanized earth moving equipment, such as bulldozer or backhoe, or the cutting of trees." 70 Fed. Reg. 32713. Thus, if defendant's mining operation, including residential occupancy, *might* cause significant disturbance of surface resources, whether or not it involves mechanized tools, he must comply with the relevant USFS regulations by filing a NOI and a subsequent PPO if required by the District Ranger. See 36 C.F.R. § 228.4(a).

      Defendant further contends that because his residential occupancy is reasonably necessary to his mining operations, the USFS should not interfere with his activities. This consideration is irrelevant to a determination of whether defendant must submit a NOI in the first place.[2] The NOI and PPO requirements are simply triggered when an individual seeks to begin operations that might cause significant surface disturbance. Moreover, the USFS recently amended 36 C.F.R., part 261, which provides for criminal enforcement of the part 228 requirements, and commented that "[a]ssuming that proposed operations, *including all reasonably incident uses*, will likely cause a significant disturbance of surface resources, they must be authorized by an approved plan of operations before those operations commence." See 73 Fed. Reg. 65997 (effective Dec. 8, 2008) (emphasis added); see also United States v. Doremus, 888 F.2d 630, 632 (9th Cir. 1989), *cert. denied*, 498 U.S. 1046 (1991) (rejecting a miner's contention that conduct "reasonably incident[al]" to mining could not be regulated).

      Defendant also asks the court to declare that his claim is "valid," as a basis to allow him to freely mine and occupy his claim. Once again, however, defendant raises an issue which is unrelated to his need to comply with the USFS notice requirements. A claim is said to be valid

6

when it is scientifically proven to contain valuable mineral deposits that are commercially viable. See Clouser, 42 F.3d at 1528 (describing the legal standard for determining validity). Validity is officially determined by examiners in the Department of the Interior's Bureau of Land Management ("BLM"), typically for the purposes of patenting mining claims or ejecting individuals suspected of using claims for non-mining purposes. See e.g., Lex, 300 F. Supp. 2d at 957-58 (explaining that a patent will not be issued until there has been a determination by the BLM that a claim is valid); United States v. Bagwell, 961 F.2d 1450, 1456 (9th Cir.1992) (ejecting residents from a mill site found to be invalid in part because the limited amount of potential ore on site was of low grade and could not be mined profitably). Validity, however, is not a factor in determining whether an individual must submit a NOI or PPO pursuant to 36 C.F.R., part 228 to commence mining operations or to occupy a claim. In fact, a claim need not be valid in order for an individual to conduct surface operations. See FSM § 2819 (noting that "a claimant with a valid discovery does not have more surface rights than one without a valid discovery"). This is logical in light of the fact that most operators would not know whether their claims were valid until they actually performed some type of work on the claim. If anything, the subsequent finding of a valuable mineral deposit would bolster support for a later PPO that proposes residential occupation of the claim. See Forest Service Manual[3] § 2818.1 (taking into account the "stage of mineral activities" in determining whether to allow residential structures under a PPO). Even assuming defendant's claim is valid, valid claims do not fall within the exceptions to the notice requirements listed in part 228.4(a)(1). Thus, regardless of the validity of defendant's claim, he must still abide by USFS regulations before commencing any operations that might cause significant surface disturbance.

     Lastly, 36 CFR, part 228.14, provides that applicants may appeal adverse decisions, such as a rejection of a PPO, under the provisions of 36 CFR, part 251 ("Appeals of Decisions Relating to Occupancy and Use of National Forest System Lands"). The regulations state that "it is the position of the Forest Service that, for decisions appealable under the regulations, exhaustion should be required before an aggrieved party may seek federal court review." Clouser, 42 F.3d at 1532 (citing 36 C.F.R. § 251.101). Additionally, the Ninth Circuit has applied the exhaustion requirement to judicial review of Forest Service actions on PPOs. Clouser, 42 F.3d at 1532; Doremus, 888 F.2d at

7

632 (exhaustion required in order to obtain judicial review under APA of Forest Service action on plan of operations); Brunskill at 941 (finding that judicial review was not available to defendants on the ground that they had failed to appeal the USFS' rejection of their PPO). Because defendant has not submitted any NOIs or PPOs, has not received an adverse decision, and has not pursued an appeals, the court is not faced with the question of whether he may properly mine and occupy his claim.

Whether defendant's mining operation and occupancy will cause significant disturbance of surface resources necessitating a NOI and later PPO is not for the court to determine but rather an issue for the District Ranger who has jurisdiction over the area in which mining operations are being conducted. See 26 C.F.R. § 228.4(a). The court will not excuse defendant from complying with any applicable USFS regulations.[4]

II.     Reasonableness of Probation Conditions

It is well-established that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.'" U.S. v. Knights, 534 U.S. 112, 119 (2001) (citation omitted). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." Id.

Aside from compliance with the administrative requirements of the USFS which limit Russell's activities on USFS lands, this court has further restricted defendant by requiring prior approvals from the USPO and either approval of the USFS or accompaniment of his attorney to enter USFS property for the purpose developing his claims. These provisions, unrelated to USFS regulations, have been imposed upon defendant due to the seriousness of his conviction for assault and his prior criminal history related to violations of USFS regulations.

Through the proposed modifications, defendant seeks unfettered access to Six Rivers National Forest, the site of the assault that resulted in his conviction. The court not only is disinclined to grant such access given defendant's assault conviction, historical disputes with USFS officials, and previous failures to comply with probation orders, but also lacks the authority to

8

1  relieve compliance with that which the regulations of the USFS require.  See 18 U.S.C. § 3563(b)(5)
2  (the court may use its discretion to prohibit defendant "from engaging in a specified occupation,
3  business, or profession bearing a reasonably direct relationship to the conduct constituting the
4  offense, or engage in such a specified occupation, business, or profession only to a stated degree or
5  under stated circumstances").

6      However, the court will modify Special Condition No. 7 to the extent that defendant need
7  only notify the USPO prior to going upon USFS lands.  To that end, however, defendant must follow
8  all USFS regulations as they apply to all members of the general public; the court will not grant
9  defendant any exceptions.  Thus, if defendant plans to conduct any operations that "might cause
10 significant disturbance of surface resources," he shall duly follow the requirements of 36 C.F.R.,
11 Part 228.4(a).  Given defendant's previous activities on his claim, the court finds it likely that a plan
12 of operations will be necessary.  If defendant is dissatisfied with any USFS decisions regarding his
13 plans, he may appeal them as set forth in applicable USFS regulations.  If defendant is found to have
14 violated any further USFS regulations, such as those prohibiting unauthorized occupancy, the court
15 will may find it necessary to completely prohibit his access to USFS land for the balance of his
16 probation.

17
18 CONCLUSION
19     For the foregoing reasons, the court hereby DENIES defendant's motion to modify the
20 special conditions of his probation.

21
22     IT IS SO ORDERED.

23
24 Dated:  January 5, 2009

25     MARILYN HALL PATEL
    United States District Court Judge
26     Northern District of California

27
28

**ENDNOTES**

1. An unpatented mining claim is one to which the United States government retains title. See United States v. Shumway, 199 F.3d 1093, 1099-1102 (9th Cir. 1997) (explaining miner's property rights and the patenting process). Individuals like defendant who have staked such claims "so long as they comply with the laws. . .shall have the exclusive right of possession and enjoyment of all the surface located within the lines of their locations." Id. at 1099 (quoting 30 U.S.C. § 26).

2. The court takes note that in August 1999, USFS mineral examiners determined that defendant's "activities, improvements, storage of wrecked cars and inoperable equipment," lead them to conclude that defendant's structures and occupancy were "not reasonably incidental to and required for mineral operations." (Docket Entry 48). In 2007, the USFS District Ranger also expressed concern that many of defendant's activities have not been related to mining, but rather to quarrying slate. (Docket Entry 48, Exh. 1).

3. See Cleveland v. United States, 546 F.Supp. 2d 732, 740 n.4 (N.D. Cal 2008) (describing the FSM as a part of the Forest Service Directive System, which codifies USFS policy, practice, and procedure).

4. Defendant also claims that the NOI and PPO requirements invade his right to privacy and present the potential for "claim jumping." The court finds this argument unconvincing because his claim, if properly maintained, is already a matter of public record with the BLM. See 43 U.S.C. § 1744(b) (requiring owners of unpatented claims to record those claims with the BLM within ninety days of location, and annually thereafter). Defendant's proposed modification that orders the USFS to remove the earthen berm that allegedly blocks access his claim is also implicated by the NOI requirement, because it requires submission of information regarding the "route of access to the area of operations." See 36 C.F.R. § 228.4(a). As such, the issue of access is properly determined first by the USFS, not the court. See Clouser, 42 F.3d at 1530 (affirming USFS authority to regulate mode of access to claims).